IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LINDA BYRD, an Oklahoma resident, Individually, and on behalf of all Wrongful Death Beneficiaries of Larry Gene Byrd, deceased,<br><br>     Plaintiff,<br><br>-vs-<br><br>BNSF RAILWAY COMPANY, KIRBY CARSON, JOSHUA ERNZEN, JOHN DOE #1, and JOHN DOE #2,<br><br>     Defendants. | ))))))))))))))) | Case No. CIV-21-1058-F<br><br>(District Court of Cleveland County, Case No. CJ-2021-999) |

**ORDER**

  This wrongful death action was originally commenced by plaintiff Linda Byrd (Byrd), individually and on behalf of all wrongful death beneficiaries of Larry Eugene "Gene" Byrd, deceased, in the District Court of Cleveland County, State of Oklahoma. Defendant BNSF Railway Company (BNSF), with the consent of defendants Kirby Carson (Carson) and Joshua Ernzen (Ernzen), timely removed the action to this court. In the notice of removal, BNSF alleged the court may exercise federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Byrd's negligence *per se* claim—alleged violation of Oklahoma Administrative Code (O.A.C.) § 165:32-1-8(a)—because the claim is completely preempted by the Interstate Commerce Commission Termination Act (ICCTA), 49 U.S.C. §§ 10101, *et seq*., and the court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Byrd's remaining claims. Alternatively, BSNF alleged that the court may exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332 over all of Byrd's claims because

Carson, who, like Byrd, is an Oklahoma citizen, was fraudulently joined as a defendant to the action and his citizenship may be disregarded for purposes of diversity jurisdiction.[1]

Shortly after removal, defendants BNSF and Carson filed motions to dismiss. Byrd also filed a motion to remand. All motions are fully briefed and at issue. As the court's subject matter jurisdiction over this action is challenged in the motion to remand and is a plenary issue, the court will address that motion first.

Motion to Remand

*Background Facts and Allegations*

Byrd is the surviving widow of Gene Byrd. According to Byrd's state court petition, at or around 1:15 a.m. on September 6, 2020, police officers with the Noble Police Department and emergency medical service personnel with the Noble Fire Department were dispatched to the Byrd home to provide medical assistance to Mr. Byrd who was having chest pains and losing consciousness, but still breathing. The only route to the Byrd home required the first responders to travel over a railroad crossing (the Maple Street crossing). At that time, the Maple Street crossing was blocked by a train owned and operated by BNSF. The railroad company also owned and operated the railroad tracks at the Maple Street crossing. At approximately 1:20 a.m., the Noble Police Department contacted BNSF to tell its train crew to move the train off the Maple Street crossing to allow the emergency medical service personnel to cross to respond to the medical emergency at the Byrd home.[2] At approximately

---

[1] According to the notice of removal, Mr. Byrd was an Oklahoma citizen at the time of death, BNSF is a citizen of Delaware (state of incorporation) and of Texas (principal place of business) and Ernzen is a citizen of Texas. Although Byrd's state court petition also named two John Doe defendants, BNSF alleged that under Tenth Circuit precedent, the citizenship of these defendants (John Doe #1 and John Doe #2) may be disregarded for purposes of determining diversity jurisdiction. *See*, McPhail v. Deere & Co., 529 F.3d 947, 951 (10th Cir. 2008).

[2] Prior to that call, the Noble Police Department had contacted defendant BNSF three times during the evening hours of September 5, 2020, to advise it of a train blocking another railroad crossing

1:23 a.m., a Noble police officer asked the train conductor if he would be able to move the train either forward or backward and he said "no." The front of the train was then sitting 100 feet north of the Maple Street crossing, "not a long distance for the train to back up and move off of the crossing." Doc. no. 1-2, at 6. According to Byrd, the conductor closed the locomotive window and would not respond to any further questions from the officer. At approximately 1:30 a.m., the train moved forward and cleared the railroad tracks. The emergency medical services personnel proceeded to the Byrd home, located one half mile south of the railroad crossing, and began defibrillation efforts on Mr. Byrd at 1:32 a.m. However, seventeen minutes had passed since Mr. Byrd's cardiac event, and it was "too late for the defibrillator efforts to be successful in restarting" Mr. Byrd's heart. *Id.* at 7.

In her petition, Byrd alleged that defendants, by denying or blocking emergency medical service personnel access to Mr. Byrd, proximately caused and/or contributed to cause Mr. Byrd's death. Along with BNSF, Byrd named as defendants, John Doe #1 and John Doe #2 (the train conductor and train engineer),[3] Carson, BNSF Division Trainmaster, and Ernzen, BNSF Road Foreman of Engines. Byrd seeks compensatory and punitive damages against defendants under theories of negligence based upon Oklahoma law. In her petition, Byrd alleged that defendants were negligent *per se* for violating O.A.C. § 165:32-1-8(a), which states in part: "Every railroad shall be operated in such a manner as to minimize obstruction of emergency vehicles at public grade crossings."

---

(the Chestnut Street crossing), approximately 0.2 miles north of the Maple Street crossing. The police department had received calls from three different individuals who had been waiting for various times (approximately 30 minutes; approximately one hour; and over two hours), for the train to clear the Chestnut Street crossing. Plaintiff alleged, upon information and belief, that the same train was blocking the Maple Street crossing at the same time.

[3] Byrd recently dismissed her action against defendants John Doe #1 and John Doe #2. *See*, doc. no. 38.

As stated, BNSF removed Byrd's action to this court, alleging that Byrd's negligence *per se* claim is completely preempted by the ICCTA, giving rise to the existence of federal question jurisdiction. BNSF alternatively alleged that Carson, a non-diverse defendant, was fraudulently joined to the action, giving rise to the existence of diversity jurisdiction. In her motion, Byrd argues that her negligence *per se* claim is not completely preempted by the ICCTA and that Carson was not fraudulently joined as a defendant. Therefore, she contends that court lacks subject matter jurisdiction and that remand of this action to state court is required.

*Discussion*

  A. Complete Preemption

"Federal courts are courts of limited jurisdiction; they must have a statutory basis for their jurisdiction." Dutcher v. Matheson, 733 F.3d 980, 984 (10th Cir. 2013) (internal quotation marks and citation omitted). Thus, this court presumes no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction. *Id.* at 985. Here, defendants invoke federal jurisdiction, and they bear the burden of establishing jurisdiction. *Id.*

"The federal removal statute, 28 U.S.C. § 1441, permits a defendant to remove to federal court 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'" Dutcher, 733 F.3d at 984 (quoting § 1441). Under 28 U.S.C. § 1331, federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." To determine whether a claim arises under federal law, the court examines the well-pleaded allegations of the complaint and ignores potential defenses. Devon Energy Production Co., L.P. v. Mosiac Potash Carlsbad, Inc., 693 F.3d 1195, 1203 (10th Cir. 2012). This is known as the "well-pleaded complaint rule." Under the well-pleaded complaint rule, a claim arises under federal law only when the allegations of the well-pleaded complaint show that the claim is based on federal law. *Id.*

One exception or independent corollary to the well-pleaded complaint rule is the complete preemption doctrine. Board of County Commissioners of Boulder County v. Suncor Energy (U.S.A.) Inc., 25 F.4th 1238, 1256 (10th Cir. 2022), *pet. for cert. filed*, No. 21-1550 (June 10, 2022). The doctrine of complete preemption applies when "the pre-emptive force of a [federal] statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Id. (quotations marks and citations omitted). "When this happens, the state-law cause of action becomes purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of the federal law." Id. (quotation marks and citation omitted). "Upon the doctrine's proper invocation, a complaint alleging only a state law cause of action may be removed to federal court on the theory that federal preemption makes the state law claim necessarily federal in character." Id. (quotation marks and citations omitted).

The complete preemption doctrine "is a rare doctrine." Suncor Energy (U.S.A.) Inc., 25 F.4th at 1257 (quotation marks and citation omitted). "The circumstances are so rare in fact that the Supreme Court has recognized complete preemption in only three areas: § 301 of the Labor Management Relations Act[]; § 502 of the Employee Retirement Income Security Act of 1974 [] and actions for usury against national banks under the National Bank Act." Devon Energy Production Co., L.P., 693 F.3d at 1204-05. "[The Tenth Circuit] has also recognized the complete preemptive effect of the Securities Litigation Uniform Standards Act." Suncor Energy (U.S.A.) Inc., 25 F.4th at 1257 (citing Anderson v. Merrill Lynch Pierce Fenner & Smith, 521 F.3d 1278, 1283-84 (10th Cir. 2008)).

In deciding whether a state-law claim is completely preempted by federal law, Tenth Circuit precedent requires a two-step analysis. Suncor, 25 F.4th at 1256. First, the court must ask whether the federal question at issue preempts the state law relied on by the plaintiff. *Id*. Second, the court must ask whether Congress intended to

5

allow removal in such a case, as manifested by the provision of a federal cause of action. *Id*. Because the first step of the analysis implicates the merits of an ordinary preemption defense which cannot support removal, the Tenth Circuit requires the analysis begin with the second step. *Id*.

Defendants assert that the ICCTA, specifically, 49 U.S.C. § 11704(c)(1), provides for a substitute federal cause of action for Byrd's negligence *per se* claim. Section 11704(c)(1) states in relevant part that a person may "bring a civil action under subsection (b) of this section to enforce liability against a rail carrier providing transportation[.]" 49 U.S.C. § 11704(c)(1). Subsection (b) of § 11704 states in relevant part that a rail carrier "is liable for damages sustained by a person as a result of an act or omission of that carrier in violation of this part[.]" 49 U.S.C. § 11704(b). Defendants point out that the First Circuit in Fayard v. Northeast Vehicle Servs., 533 F.3d 42, 44 (1st Cir. 2008), and the Eighth Circuit in Griffioen v. Cedar Rapids and Iowa City Ry. Co., 785 F.3d 1182, 1191 (8th Cir. 2015), have noted that § 11704(b) would authorize a civil action against a rail carrier where a person has been damaged by that carrier's failure to establish reasonable "rules and practices on matters related to [] transportation or service" as set out in 49 U.S.C. § 10702(2). According to defendants, Byrd's negligence *per se* claim constitutes such a claim, asserting that defendants' alleged conduct can be challenged as an unreasonable rule or practice under § 10702(2).

Upon review, the court concludes that defendants have not met their burden of establishing that § 11704(c)(1) provides a substitute federal cause of action for Byrd's negligence *per se* claim. The court acknowledges that § 11704(c)(1) allows a person to bring a civil action under § 11704(b) to enforce liability against a rail carrier. Section 11704(b) provides that a rail carrier is liable for damages sustained by "as a result of an act or omission of that carrier in violation of this part[.]" Section 10702(2), a provision within Subtitle IV of Title 49 of the United States Code, does require rail carriers establish reasonable "rules and practices on matters related to []

transportation or service." 49 U.S.C. § 10702(2). However, as noted by the First and Eighth Circuits, § 10702's scope "may be limited by context." Fayard, 533 F.3d at 47; Griffioen, 785 F.3d at 1191; *see also*, Californians for Alternatives to Toxics v. North Coast R.R. Authority, Nos. C-11-04012 JCS, C-11-04103 JCS, 2012 WL 1610756, at *9 (N.D. Calif. May 8, 2012). Indeed, the Eighth Circuit explained that "[t]he majority of cases involving violations of § 10702 concern challenges to tariffs and disputes between shippers and carriers." *Id*. at 1191. Defendants have not cited, and the court has not found, any case which would clearly support application of § 10702 to the type of claim at issue in this case.

Defendants argue that the court should follow the Fifth Circuit's decision in Elam v. Kansas City S. Ry., 635 F.3d 796 (5th Cir. 2011), where the appellate court held that a negligence *per se* claim based upon the railroad's violation of Mississippi anti-blocking statute, Miss. Code. Ann. §77-9-235, was completely preempted by the ICCTA.[4] However, in analyzing whether the claim was completely preempted, the Fifth Circuit did not specifically address whether the ICCTA provided a substitute federal cause of action for the claim at issue. *See*, Elam, 635 F.3d at 803-808. After determining the claim was completely preempted by the ICCTA, the Fifth Circuit decided that the district court would have original jurisdiction over the claim. In so deciding, it stated that § 11704(c)(1) of the ICCTA contemplated civil

---

[4] Defendants point out that O.A.C. § 165:32-1-8(a), upon which Byrd's negligence *per se* claim is based, was promulgated pursuant to Oklahoma's anti-blocking statute, 66 O.S. § 190. Recently, the Tenth Circuit in BNSF Railway Company v. Hiett, 22 F.4th 1190, 1192 (10th Cir.), *cert. denied*, City of Edmond, Oklahoma v. BNSF Railroad Company, 142 S.Ct. 2835 (2022), determined that the ICCTA, specifically, 49 U.S.C. § 10501(b), expressly preempted subsection A of that statute, 60 O.S. § 190(A), which provides in relevant part that "no railcar shall be brought to rest in a position which blocks vehicular traffic at a railroad intersection with a public highway or street for longer than ten (10) minutes." However, the court notes the Tenth Circuit did not address the complete preemption doctrine in its decision and did not address subsection C(4) of the statute, 60 O.S. § 190(C)(4), that, like O.A.C. § 165:32-1-8(a), states "[e]very railroad shall be operated in such a manner as to minimize obstruction of emergency vehicles at public highway grade crossings."

actions under against rail carriers. According to the appellate court, § 11704(b) authorized a person who has suffered damages resulting from the rail carrier's violation of the ICCTA to bring a civil action under § 11704(c)(1). However, the Fifth Circuit did not identify any substantive provision of the ICCTA, or any regulation issued pursuant to the ICCTA, that was violated by the railroad under the circumstances of that case. It did not discuss § 10702, which defendants advance in their briefing as applicable to Byrd's claims. From the court's reading of Elam, the Fifth Circuit did not make any specific finding that the railroad had in fact violated the ICCTA. And as the Eighth Circuit stated in Griffioen, "[t]he scope of the ICCTA's cause of action is [] limited by the ambit of the statute's substantive rules." 785 F.3d at 1191.

Although the court agrees with defendants that the doctrine of complete preemption does not require the ICCTA to provide Byrd with the exact relief she seeks under her state law-claim, *see*, Caterpillar Inc. v. Williams, 482 U.S. 386, 391 n. 4 (1987), it does require, under Tenth Circuit precedent, that the ICCTA provide Byrd with a cause of action that would "vindicate the same basis right or interest that would otherwise be vindicated under state law," Devon Energy, 693 F.3d at 1207 (citations omitted); *see also*, Dutcher, 733 F.3d at 986 ("The existence of a potential federal cause of action is critical; complete preemption is not the same as preemption."); Griffioen, 785 F.3d at 1191 ("[I]t is unlikely that Congress would intend to completely preempt state-law causes of action without providing a federal cause of action designed to vindicate similar rights and interests or to redress wrongs of a similar type.") Because defendants have not shown any replacement federal cause of action for Byrd's negligence *per se* claim, the court concludes that defendants have failed to establish that the complete preemption doctrine applies, and thus, they have not satisfied their burden of showing that the court may exercise federal question jurisdiction under § 1331.

B. Fraudulent Joinder

Under 28 U.S.C. § 1332, federal district courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and is between "citizens of different States." Although Byrd and defendant Carson are citizens of Oklahoma, defendants alleged in their notice of removal that the court may exercise diversity jurisdiction over all Byrd's claims because Carson was fraudulently joined to the action and his citizenship may be ignored for purposes of assessing complete diversity of the parties. *See generally*, Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921) (The right to removal cannot be defeated by "a fraudulent joinder of a resident defendant having no real connection with the controversy.").

"'To establish [fraudulent] joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" Dutcher, 733 F.3d at 988 (quoting Cuevas v. BAC Home Loans Servicing LP, 648 F.3d 242, 249 (5th Cir. 2011)). "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Id*. (quotation marks and citation omitted).

In support of removal, BNSF relied upon the second prong of the fraudulent joinder test—the inability of Byrd to establish a cause of action against Carson. BNSF submitted a declaration by Carson averring that (1) he was not on duty on September 5, 2020, or before 2:00 a.m. on September 6, 2020; and (2) he was never notified that a BNSF train was blocking the Maple Street crossing on September 5, 2020 or September 6, 2020, or that emergency medical service personnel were prevented from traveling through the Maple Street crossing at that time, until after September 6, 2020. BNSF argued that given those circumstances, Carson could not be held liable in negligence under Oklahoma law. Defendants, in response to plaintiff's remand motion, again cited Carson's declaration. In a reply brief, Byrd

9

asserted that her negligence claims do not require Carson to have been on duty on the night in question. She specifically relied upon allegations set forth in subparagraphs o, q, r, and s of paragraph 47 of her state court petition as bases for possible negligence claims against defendant Carson. In a sur-response allowed by the court, defendants submitted the declarations of Christopher T. Grissum, Carson's direct supervisor, and of Carson averring that Carson did not have any authority relating to the purported duties alleged in subparagraphs o, q, r, and s of paragraph 47.

After reviewing the parties' submissions, the court entered an order (doc. no. 34) advising the parties that under the precedent of Smoot v. Chicago, Rock Island & Pacific R.R. Co., 378 F.2d 879, 882 (10th Cir. 1967), the court was inclined to pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available. As it appeared that Byrd could not contest or dispute the declarations submitted by defendants, the court, exercising its discretion, granted Byrd leave to conduct limited discovery as to the matters addressed in both declarations of Carson and the declaration of Mr. Grissum and to file a sur-reply. Byrd complied with the court's order and filed a sur-reply. With leave of court, defendants filed a supplemental brief and Byrd filed a response.[5]

---

[5] With her response, Byrd submitted a declaration of Brandon Ogden, a former BNSF Trainmaster, Director of Administration, Terminal Manager and Superintendent of Operations. Mr. Ogden has been retained by Byrd as an expert witness. Byrd relies upon testimony by Mr. Ogden to establish a colorable negligence claim against Carson. Defendants have moved to strike Byrd's response to the supplemental brief, arguing that Mr. Ogden's declaration and the issues he addressed should have been raised in Byrd's sur-reply to allow defendants an opportunity to respond. Doc. no. 43. Defendants contend that because Mr. Ogden's declaration was not presented in the sur-reply, the issues raised by him have been waived and the response should be stricken. In the alternative, defendants have moved for leave to depose Mr. Ogden. Doc. no. 44. Upon due consideration and acting in its discretion, the court denies both motions. The court is not convinced that Byrd waived the issues raised by Mr. Ogden by not specifically addressing, in her sur-reply, the meaning of the "when practical" clause of General Code of Operating Rule 6.32.6 ("[w]hen practical, a standing train or switching movement must avoid blocking a public crossing longer than 10 minutes."). And it appears to the court that Byrd's response, including Mr. Ogden's declaration, was merely

To prove their allegation of fraudulent joinder, defendants must demonstrate that there is "'no possibility'" that Byrd would be able to establish a cause of action against defendant Carson in state court.  Montano v. Allstate Indemnity, 2000 WL 525592, at *1 (10th Cir. April 14, 2000) (quoting Hart v. Bayer, 199 F.3d 239, 246 (5th Cir. 2000)) (unpublished Tenth Circuit case cited as persuasive pursuant to 10th Cir. R. 32.1(A)).  "[T]he [fraudulent joinder] issue must be capable of summary determination and be proven with complete certainty."  Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964).

Upon review of the record, the court cannot say that there is no possibility that Byrd could establish a negligence clam against Carson.  Defendants posited that Carson lacked all authority to act in any manner—whether through policy-making, policy enforcement, disciplinary action, or operation of the train—prior to September 6, 2020, that would have prevented or affected the train's presence at the Maple Street crossing, when emergency personnel sought access to the Byrd home on September 6, 2020.  Doc. no. 28, ECF p. 4.  However, the evidence, viewed in Byrd's favor, reveals that defendant Carson had responsibility to conduct operations testing with train crews as to GCOR 6.32.6, which required standing trains to avoid

---

responding to matters placed in issue by defendants in their supplemental brief.  See, Assessment Technologies Institute, LLC v. Parkes, 2021 WL 4860553, at *4 (D. Kan. Oct. 19, 2021).  The court declines to grant defendants leave to depose Mr. Ogden and to file a second supplemental brief.  Defendants contend that "Mr. Ogden's declaration contained several inaccurate statements, including his interpretation of General Code of Operating Rule ("GCOR") 6.4 "back up" movement and conclusion as to whether Mr. Carson had reviewed the necessary documents to determine the train's length."  Doc. no. 44, ¶¶ 3-4.  The court, however, concludes that it need not rely upon Mr. Ogden's testimony regarding these two issues in determining that defendants cannot show that there is no possibility of a viable negligence claim against defendant Carson.  Nor does the court need to rely upon Mr. Ogden's description of "a concept of dynamic meet/pass maneuvers."  Id. at ¶ 6.  In the court's view, Mr. Ogden's testimony that GCOR 6.32.6 applies to the meet and pass movements, which defendants do not specifically state is inaccurate, is sufficient support for Byrd's negligence claim against Carson.  Even if the court were to allow defendants to depose Mr. Ogden, the court, in deciding the fraudulent joinder issue, is required to determine all factual issues in Byrd's favor and the court is not satisfied that allowing the deposition of Mr. Ogden would result in the court finding that the fraudulent joinder issue is capable of summary determination and proven with complete certainty.

blocking a public crossing for longer than 10 minutes; GCOR 6.32.6 applied to the scenario that caused the alleged injuries to Mr. Byrd; and Carson never conducted any testing of the train crews with respect to GCOR 6.32.6.  Further, in Fine v. Braniff Airways, Inc., 302 F. Supp. 496 (W.D. Okla. 1969), the court determined that a director of passenger and cargo services for an airline, who was responsible to see that proper passenger unloading procedures were enforced, and who was responsible for training personnel charged with unloading passengers and supervised such operations, might be liable under a negligence theory for injuries sustained by a passenger when deplaning, even though the director was not at the airport when the accident occurred.  Mindful that legal issues, as well as factual issues, must be resolved in favor of Byrd in deciding the fraudulent joinder issue, and that the court is not to "pre-try, as a matter of course, doubtful issues," Smoot, 378 F.3d at 882, the court concludes that there is at least a possibility that Byrd can establish a negligence claim against Carson under Oklahoma law.

In their briefing, defendants argue that Byrd cannot maintain a negligence claim against Carson because the claim is in essence a "loss of chance of survival" claim, and Oklahoma law does not recognize such claim except in medical malpractice actions.  They also argue that any negligence claim against defendant Carson is preempted by the ICCTA.  The court notes that these arguments not only apply with respect to the claims alleged against Carson, but also with respect to the claims alleged against BNSF and Ernzen.  Indeed, the pending motions to dismiss raise these same arguments.[6]  But "[t]here is no improper joinder if the defendants' showing compels the same result for the resident and non-resident defendants, because this simply means that the plaintiff's case is ill-founded as to all of the defendants.  Such a defense is more properly an attack on the merits of the claim,

---

[6] Although Ernzen has yet to file a motion to dismiss, BNSF argues in its motion to dismiss that dismissal of Byrd's entire action is appropriate for the same reasons proffered by BNSF.  Doc. no. 12, ECF p. 12, n. 2.

rather than an inquiry into the propriety of the joinder of the in-state defendant." Cuevas, 648 F.3d at 249. Therefore, the court concludes that the merits of these arguments need not be addressed as they are insufficient to establish fraudulent joinder of Carson.

Because the court finds that there is at least a possibility that Byrd can establish a negligence claim against Carson, the court also cannot say that Carson has been fraudulently joined to this action as a party defendant. As a result, Carson's Oklahoma citizenship may not be disregarded, and the court may not exercise diversity jurisdiction under § 1332.

C. Remand Required Pursuant to 28 U.S.C. § 1447(c)

For the reasons stated, the court may not exercise federal question jurisdiction under § 1331 or diversity jurisdiction under § 1332. The court therefore concludes that it lacks subject matter jurisdiction over Byrd's wrongful death action and remand of this action to state court pursuant to 28 U.S.C. § 1447(c) is required. Byrd's motion to remand will be granted.

Motions to Dismiss

Defendants BNSF and Carson filed motions to dismiss challenging all Byrd's claims under Rule 12(b)(6), Fed. R. Civ. P.[7] In light of the court's conclusion that it lacks subject matter jurisdiction over this action, and that remand is required under 28 U.S.C. § 1447(c), the court does not address the merits of Byrd's claims. The court will deny defendants' motions to dismiss as moot.

Conclusion

Accordingly, it is **ORDERED**:

Defendants BNSF Railway Company and Kirby Carson's Motion to Strike Plaintiff's Response to Defendants' Supplemental Brief (doc. no. 43) and

---

[7] In their motions, defendants also cite Rule 12(b)(1), Fed. R. Civ. P. However, defendants do not develop any arguments with respect to the applicability of Rule 12(b)(1) as a basis for dismissal of Byrd's claims.

13

Defendants BNSF Railway Company and Kirby Carson's Alternative Motion for Leave to Depose Plaintiff's Declarant and File Second Supplemental Brief in Opposition to Plaintiff's Motion to Remand (doc. no. 44) are **DENIED**.

Plaintiff's Motion to Remand (doc. no. 20) is **GRANTED**.  This action is remanded to the District Court of Cleveland County, State of Oklahoma pursuant to 28 U.S.C. § 1447(c).

In light of the court's ruling, Defendant Kirby Carson's Motion to Dismiss Plaintiff's Petition for Damages for Wrongful Death (doc. no. 7) and Defendant BNSF Railway Company's Motion to Dismiss Plaintiff's Petition for Damages for Wrongful Death (doc. no. 12) are **DENIED** as **MOOT**.

IT IS SO ORDERED this 22nd day of September, 2022.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

21-1058p006.docx